UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ROBERT MYERS,

    Plaintiff,

vs.                                                Case No.:

THE SALVATION ARMY,

    Defendant.

_____/

**COMPLAINT**
**DEMAND FOR JURY TRIAL**

**COMES NOW**, the Plaintiff, ROBERT MYERS, by and through his undersigned counsel, brings this lawsuit seeking declaratory relief, punitive and monetary damages against Defendant, THE SALVATION ARMY ("Salvation Army"), for violations of the Fair Housing Act – Denial of Housing, Failure to Reasonably Accommodate, and, Discrimination in the Terms, Conditions, or Privileges of the Provision of Services or Facilities in Connection with a Dwelling, The American's with Disabilities Act, and Section 504 of the Rehabilitation Act of 1973. Defendant refused emergency housing to Plaintiff based on the presence of his service animal.

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over the actions pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 3613, because this lawsuit is brought under the Fair Housing Act, 42 U.S.C. § 3601 et seq.

2. This Court has jurisdiction over the actions pursuant to 28 U.S.C. § 1331,

1

1343, for the Plaintiff's claims arising under Title III of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act of 1973 ("Section 504").

3. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1)-(b)(2) because (1) the Defendant is located in this district, and (2) a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this district.

## PARTIES

## PLAINTIFF

4. Plaintiff, ROBERT MYERS ("Mr. Myers"), was, at all times material hereto, a resident of Volusia County, Florida. Mr. Myers is an honorably discharged Veteran, who has Post Traumatic Stress Disorder ("PTSD"), seizures, panic attacks, and uses his service dog to abate the symptoms of his disabilities.

## DEFENDANT

5. Defendant, THE SALVATION ARMY is located at 560 Baullogh Drive, Daytona Beach, Florida. Defendant is a place of public accommodation, pursuant to 42 U.S.C. § 12181(7) (F), and is subject to the mandates of Title III of the ADA and its implementing regulations.

6. Defendant, THE SALVATION ARMY, is a Not for Profit Corporation, doing business in Daytona Beach-Volusia County, Florida. The Salvation Army provides transitional housing for veterans, and sheltering services for homeless individuals.

7. Defendant, THE SALVATION ARMY's shelter in Daytona Beach-Volusia County, Florida, provides housing for an unlimited amount of time to veterans seeking stable housing which can be for sixty (60) days or longer, when necessary.

8. A veteran living at THE SALVATION ARMY's shelter in Daytona Beach-Volusia County, Florida, has use of the kitchen and other common areas.

9. A veteran living at THE SALVATION ARMY's shelter in Daytona Beach-Volusia County, Florida, cooks their own meals, cleans their own rooms, maintains the premises, does their own laundry, and may spend free time socializing with the other residents together in common areas and is a covered dwelling under 42 U.S.C. § 3602(b).

10. Defendant is a recipient of federal financial assistance and, therefore, subject to the requirements of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and its implementing regulations.

## FACTUAL ALLEGATIONS

11. Mr. Myers is an honorably discharged Veteran, who worked as a paramedic in the Army.

12. As a result of his military service Mr. Myers has been diagnosed with PTSD. Mr. Myers has also been diagnosed with seizures, panic attacks, and he requires an assistance animal, a golden retriever named Ragnar.

13. Mr. Myers's impairments are permanent conditions, and his PTSD affects several major life activities to include caring for himself, eating, thinking, concentrating, and sleeping.

14. Ragnar is an animal that has been trained to perform tasks, and provides assistance for the benefit of Mr. Myers.

15. Ragnar is trained to alert Mr. Myers prior to a seizure. Ragnar is trained to redirect Mr. Myers when confronted with interactions that cause panic attacks, and he is also trained to seek help, or bark continually when medical help is required for Mr. Myers.

16. The Salvation Army is located at 560 Baullogh Drive, Daytona Beach, Florida and provides emergency housing to veterans.

17. In approximately August 2018, Mr. Myers moved from Colorado to Daytona Beach, Florida.

18. Mr. Myers planned on staying with family, which, unfortunately, fell through, and he became homeless.

19. As a result, Mr. Myers and Ragnar began living in Mr. Myers's van.

20. Mr. Myers would park his van in the woods, and in isolated locations to avoid getting into any trouble.

21. He needed to be mindful to avoid law enforcement because they would ask him to keep moving his van.

22. Living in the woods is dangerous, and exposed him to attacks by other people and to theft.

23. In September, it is very hot in Florida, and living in a van exacerbated his medical and mental health conditions.

24. Mr. Myers was in need of emergency housing, and went to the Department of Veterans Affairs ("VA") in Daytona Beach, Florida seeking help.

25. A VA employee told Mr. Myers to go to The Salvation Army on Baullogh Drive on September 12, 2018, at 8:30 a.m., and obtain emergency housing through their veterans program.

26. On September 12, 2018, Mr. Myers arrived at The Salvation Army, a bit prior to 8:30 a.m. because he was anxious to seek housing. He was without Ragnar, as Ragnar was at the veterinarian's office having a needed medical procedure.

27. Upon arriving at The Salvation Army, Mr. Myers was greeted by an employee, believed to be "Miss Jones."

28. Mr. Myers told Miss Jones he was sent by the VA for emergency housing and Miss Jones told Mr. Myers to wait in the lobby.

29. Another employee, believed to be named "Tamika," then told Mr. Myers they had an available bed for him, and to come back at 2:00 p.m.

30. Mr. Myers then told Tamika he would be back, and he used a service dog.

31. Tamika then told Mr. Myers, he could not stay at The Salvation Army with a service dog.

32. Mr. Myers tried to explain his rights under the Americans with Disabilities Act ("ADA"), but The Salvation Army was not interested in his explanation.

33. Mr. Myers pulled up information about the ADA and service animals on his cell phone to show to Tamika who then replied something to the effect of *I don't have to read what the ADA says, if you have a dog, you can't stay here.*

34. Mr. Myers then asked to speak to a supervisor and then spoke to a person who said she was the manager, believed to be named Salinka Macintosh.

35. Ms. Macintosh also told Mr. Myers he could not stay at The Salvation Army with a service animal.

36. Mr. Myers tried showing Ms. Macintosh his cell phone with the Department of Justice website that explains the requirement to reasonably accommodate disabled individuals with service animals, but to no avail.

37. At no time did Ms. Macintosh, or any other employee of The Salvation Army, tell Mr. Myers the Ballough Drive location was closed, or that he should report to another location for housing.

38. If they had, he would have reported to that location.

39. Being homeless is difficult and stressful, especially if someone is suffering with PTSD and other disorders. PTSD is a "hidden" disability, and often veterans are castigated for feigning PTSD and using service animals. Mr. Meyers is disabled and his service animal is necessary  Mr. Myers is acutely aware of and has experienced this type of castigation.

40. As a result of this denial, Mr. Myers continued to be homeless, requiring him to ask friends if they would allow him and Ragnar to stay for short periods of time.

41. This forced him to keep moving around, and exacerbated his PTSD because he was constantly worried about being homeless, maintaining good hygiene, securing meals and ensuing Ragnar would be safe.

42. Mr. Myers has been homeless many times during his life, and will likely need emergency housing in the future.

43. This discrimination exacerbated his disability, by making him worry more about housing, and exclusion.

44. It also caused humiliation and degradation due to its treatment of him as a disabled vet with a service dog.

## COUNT I

## VIOLATIONS OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT

45. Plaintiff repeats and re-alleges allegations ¶¶ 1 through 44 in support of his claims.

46. This Count I seeking declaratory and injunctive relief is brought pursuant to Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12182, and its implementing regulations.

47. Mr. Myers's disabilities substantially limit major life activities as defined by Title III of the ADA. Mr. Myers meets the essential eligibility requirements for Defendant's services at all times material hereto, and is entitled to the protections of the ADA under 42 U.S.C. § 12181, *et seq*. and its implementing regulations.

48. Title III of the Americans with Disabilities Act prohibits discrimination on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations by any person who owns or operates a place of public accommodation. 42 U.S.C. § 12182 (a).

49. The Salvation Army is a place of public accommodation pursuant to 42 U.S.C. §12181(7) (F), and is subject to the mandates of Title III, and its implementing regulations.

50. A public accommodation shall make reasonable modifications in policies, practices, or procedures, when the modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the public accommodation can demonstrate that making the modifications would fundamentally alter

7

the nature of the goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. §12182 (b) (2) (A) (ii).

51. Defendant denied Plaintiff the opportunity to benefit from its housing services, facilities, privileges, advantages, and accommodations that were equal to those afforded to other individuals who are not disabled, and use of a service dog in violation of the prohibition against discrimination based on disability. 42 U.S.C. § 12182, *et seq.*

52. Defendant intentionally failed to make reasonable modifications in its policies, practices, and/or procedures as necessary to afford Plaintiff with its goods, services, facilities, privileges, advantages, and/or accommodations in violation of the prohibition against discrimination based on disability. 42 U.S.C. § 12182, *et seq.*

53. A public accommodation shall not require documentation, such as proof that the animal has been certified, trained, or licensed as a service animal.  28 C.F.R. § 36.302.

54. Individuals with disabilities shall be permitted to be accompanied by their service animals in all areas of a place of public accommodation where members of the public, program participants, clients, customers, patrons, or invitees, as relevant, are allowed to go. 28 C.F.R. § 36.302.

55. As a result of Defendant's actions described above, Plaintiff suffered irreparable loss and injury including, but not limited to, embarrassment, emotional distress, a deprivation of his rights to non-discrimination on the basis of his disability, and use of a service animal. In engaging in this unlawful conduct described above, Defendant, Salvation Army, acted intentionally and maliciously to damage the rights and dignity of Plaintiff.

56. Mr. Myers is a veteran with a history of homelessness and a need for shelter. He will continue to need shelter in the future, possibly requiring him to return to the Defendant.

**WHEREFORE**, Plaintiff, seeks the Relief below:

## COUNT II

### VIOLATIONS OF THE FAIR HOUSING ACT
### DENIAL OF HOUSING
### 42 U.S.C. § 3604 et. seq.

57. Plaintiff repeats and re-alleges allegations ¶¶ 1 through 44 in support of his claims.

58. The foregoing conduct of the Defendant in discriminating in the rental, or to make unavailable or deny, a dwelling to any buyer or renter because of a disability, is discriminatory and unlawful and violates 42 U.S.C. § 3604(f)(1).

59. Defendant's statements, with respect to the use of a dwelling that indicated a preference, limitation, or discrimination based upon disability and their affirmative intention to make any such preference, limitation, or discrimination is unlawful and violates 42 U.S.C. § 3604(c).

60. Defendant's representation to Mr. Myers that the dwelling of his choosing was not available for use due to the presence of his service dog, when such dwelling was, in fact, available, is a pretext for discrimination, and discriminates in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, is unlawful and violates 42 U.S.C. § 3604(f)(2).

61. Defendant's actions were in total and reckless disregard of Mr. Myers's rights and indifferent to the disabilities of Mr. Myers. As a result of this unlawful discrimination, Mr. Myers has suffered injury, damages, mental anguish, grievous emotional distress, embarrassment, shame, worry, frustration, and humiliation. These losses are either permanent

or continuing, and Mr. Myers will suffer these losses in the future.

**WHEREFORE**, Plaintiff, seeks the Relief below:

### COUNT III

### VIOLATIONS OF THE FAIR HOUSING ACT, FAILURE TO REASONABLY ACCOMMODATE 42 U.S.C. § 3604(f)(3)(B)

62. Plaintiff repeats and re-alleges the allegations contained in ¶¶ 1 through 44 above as though fully set forth herein.

63. As a person that has PTSD, seizures, and panic attacks, Mr. Myers uses his service animal to abate the symptoms of his disabilities.

64. Mr. Myers advised Defendant that he is a person with a disability who uses an assistance animal and that he needed his assistance animal as a reasonable accommodation in rules, policies, practices, or services of The Salvation Army as it was necessary to afford him the equal opportunity to use and enjoy a dwelling and that request was denied in violation of 42 U.S.C. § 3604(f)(3)(B).

65. Such actions by The Salvation Army were in total and reckless disregard of Plaintiff's rights and indifferent to the needs of Mr. Myers. Further, as a direct and proximate result of Defendant's refusal to reasonably accommodate Mr. Myers use of a service animal, Mr. Myers has suffered irreparable loss and injury exacerbation of existing PTSD and anxiety, humiliation, emotional distress, and deprivation of his rights to equal housing opportunities regardless of disability.

## COUNT IV

## VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT

66.     Plaintiff repeats and re-alleges allegations ¶¶ 1 through 44 in support of his claims.

67.     Mr. Myers is disabled, and is considered an individual with a disability under Section 504 of the Rehabilitation Act.

68.     Plaintiff relies on the federal regulation set forth in Count I because Section 504 of the Rehabilitation Act relies on the regulations adopted for the ADA.

69.     The Salvation Army is a recipient of federal financial assistance including, funding from the U.S. Department of Housing and Urban Development, to include but not limited to, CDBG/Homeless Program funding, and is, therefore, subject to the requirements of Section 504. 29 U.S.C. § 794.

70.     Count IV is brought against the Defendant as a claim for discrimination against people with disabilities in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794, which provides, in relevant part:

No otherwise qualified individual with a disability in the United States, as defined in Section 705 (20) of this title, shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

71.     Defendant has intentionally discriminated against Plaintiff on the basis of his disability, and use of a service animal in violation of 29 U.S.C. §794 and its implementing regulations. Such discrimination includes, but is not limited to, failure to provide housing to a disabled man with a service dog, and exclusion to services based on disability. 45 C.F.R § 84.52.

11

72. Defendant's actions were intentional, and violated the rights of the Plaintiff by their refusal to reasonably accommodate Plaintiff, even after Defendant was put on full notice that Ragnar was a service dog, and provides services based on Mr. Myers disabilities.

73. As a result of Defendant's actions described above, Plaintiff has suffered embarrassment, emotional distress, and a deprivation of his rights to non-discrimination on the basis of his disability. In engaging in this unlawful conduct described above, The Salvation Army, acted intentionally and maliciously to damage the rights and dignity of Plaintiff.

74. Mr. Myers has a history of homelessness, and a need for shelter, and will continue to need shelter in the future, requiring him to return to the Defendant.

**WHEREFORE**, Plaintiff respectfully request the relief listed below:

### RELIEF REQUESTED

**WHEREFORE,** Plaintiff respectfully requests the following relief:

A.   The Court assume jurisdiction;

B.   Declare that the actions of the Defendant violated the Fair Housing Act, The Americans with Disabilities Act and Section 504, by discriminating against persons with disabilities;

C.   Award Plaintiff injunctive relief to prohibit such discriminatory actions, and require extensive training on the requirements of the Fair Housing Act, and the American's with Disabilities Act, and Section 504;

D.   Require Defendant to provide extensive training on the requirements of the Fair Housing Act, and the American's with Disabilities Act, and Section 504;

E. Award compensatory and punitive damages to Plaintiff for violations of the Fair Housing Act;

F. Award compensatory damages to Plaintiff for violations of Section 504;

G. Award reasonable attorney's fees, expenses and costs of suit; and

H. Grant such other relief as the Court may deem equitable and just under the circumstances.

## JURY DEMAND

Plaintiff demands trial by jury on all issues which can be heard by a jury.

DATE: August 27, 2020.

Respectfully submitted,

*/s/Sharon Caserta*
Sharon Caserta, Esq.
Florida Bar No.: 0023117
Morgan & Morgan
Deaf /Disability Rights
76 South Laura Street, Suite 1100
Jacksonville, FL 32202
(904) 361-0078 (Voice)
(904) 245-1121 (Videophone)
(904) 361-4305 (Facsimile)
scaserta@forthepeople.com

Lois Ragsdale, Esq.
Florida Bar No.: 896896
Suzanne Garrow, Esq.
Florida Bar No.: 122184
Jacksonville Area Legal Aid, Inc.
126 W. Adams Street
Jacksonville, Florida 32202
(904) 356-8371 (Voice)
lois.ragsdale@jaxlegalaid.org
suzanne.garrow@jaxlegalaid.org

*Attorneys for Plaintiff*